NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260470-U

NO. 4-26-0470

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 5, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* H.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 25JA379 |
| v. | ) | |
| Isidro G., | ) | Honorable |
| Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment, finding no issue of arguable merit could be raised on
appeal.

¶ 2    In October 2025, the State filed a neglect petition, alleging H.R. (born in October
2017), the minor child of respondent father, Isidro G., was neglected because his environment
was injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2024)). In April 2026, the trial court
made H.R. a ward of the court and placed his custody with the Illinois Department of Children
and Family Services (DCFS). Respondent appealed.

¶ 3    In June 2026, appellate counsel moved to withdraw as counsel and filed an
accompanying memorandum, asserting no arguably meritorious issue could be raised on appeal.
Isidro was notified in writing of his right to respond and has not done so. We grant the motion to
withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5             On October 15, 2025, the State filed a petition alleging H.R. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2024)) in that his environment was injurious to his welfare because his mother had "a substance abuse issue" (count I) and "mental health issues" (count II) that prevented her from parenting properly, thereby placing H.R. at risk of harm. The petition asserted it was in H.R.'s best interests to be made a ward of the court. The trial court entered an order placing H.R.'s temporary custody and guardianship with DCFS.

¶ 6             On February 2, 2026, the trial court conducted an adjudicatory hearing, during which H.R.'s mother stipulated to count I of the neglect petition. Isidro attended the hearing and did not object to the stipulation. The court provided the requisite admonishments to both parents, accepted the stipulation, and found H.R. was neglected.

¶ 7             On March 27, 2026, the Youth Service Bureau of Illinois Valley (YSB) filed a report in anticipation of the dispositional hearing. According to the report, Isidro was employed, but he had not shared any information regarding his employment with H.R.'s caseworker. Isidro maintained "inconsistent" contact with the caseworker, and he provided "limited information." Isidro demonstrated difficulty controlling his anger, and he often became verbally aggressive with the caseworker. Earlier in the process, he would apologize for his outbursts. However, more recently, "the outbursts have become more severe and have lacked apologies." Isidro had not completed the integrated assessment interview. He failed to appear at three of the four random drug drops that had been scheduled since December 2025. A DNA test was scheduled for April 9, 2026, to confirm Isidro was H.R.'s biological father. Isidro was permitted weekly supervised visits with H.R., but he often canceled his visits. H.R.'s foster parent, Tina R., reported that

Isidro contacted her frequently, asking her "to give him [H.R.] and to let [H.R.] come live with him." Tina has repeatedly informed Isidro that is not permitted. Isidro indicated he did not understand why H.R. was in the care of DCFS. Isidro had visited H.R. in his foster home approximately three times since he moved there on January 22, 2025. The report recommended H.R. remain in his current placement and be made a ward of the court.

¶ 8        On the same day, YSB filed an integrated assessment and a service plan. The integrated assessment had "minimal information available" regarding Isidro because he "was unable to be interviewed." Isidro had "a history of interpersonal violence and criminal/illegal activity." There was a protective order against him until September 2026. "Collateral sources" expressed concerns regarding his ability to provide H.R. consistent supervision and structure. The service plan recommended Isidro participate in substance abuse and domestic violence screenings, complete a psychosocial assessment, and engage in parenting classes.

¶ 9        On March 30, 2026, the trial court conducted a dispositional hearing. Sherita Morgan testified she had known Isidro for seven or eight years, and he was the father of one of her grandchildren, A.G. Morgan clarified Isidro was not A.G.'s biological father, but he began acting as A.G.'s parent after her biological father died. Morgan testified H.R. never refused to be with Isidro and said H.R. was "a typical little boy." She estimated H.R. had lived with Isidro for seven years before DCFS became involved. H.R. was not biologically related to Morgan, but he called her "Nana." If H.R. returned to Isidro's custody, Morgan would help care for H.R. when Isidro was working. Morgan "chewed [Isidro] out" to motivate him to enroll H.R. in school.

¶ 10        On cross-examination, Morgan testified she was not aware Isidro was arrested in 2021 following a domestic violence incident involving her daughter, Rachelle Powell. When asked whether she knew about Isidro facing an aggravated domestic battery change in 2014,

Morgan testified she knew Isidro "got in trouble over an ordeal with his mom," but she "didn't ask details." Morgan was also unaware that Isidro was indicted in 2016 after he attempted to strangle his mother, and he ultimately received 30 months' probation.

¶ 11　　Isidro testified he "[t]echnically" had two children, but he had "taken on" A.G. Before H.R.'s case began, he lived with Isidro, while the other children stayed at Isidro's house "two to three days out of the week." H.R. began living with Isidro when he was four months old. Isidro worked between 45 and 60 hours per week. If he obtained custody of H.R., Isidro testified his roommate, Trace Harris, would take care of H.R. while he was at work. Alternatively, H.R. would stay with Tina or Morgan until Isidro got back from work. Isidro testified he did not drink alcohol. He used medical marijuana, for which he had a card.

¶ 12　　Isidro denied ever contacting Tina to try to get her to give H.R. to him. He also denied threatening any caseworkers during the case's pendency. Isidro asserted he was a different person than he was before H.R.'s birth, saying, "I changed my whole life for my kid, really." Isidro described himself as "passionate" about his children, and he believed "people involved in this case" might have taken his passion the wrong way.

¶ 13　　On cross-examination, Isidro denied threatening violence against H.R.'s caseworker. He denied threatening to shoot her. He denied threatening to bring a firearm to the hearing. He acknowledged he used profanity with the caseworker "[p]robably a lot," but he asserted, "I did apologize in open court, even though it is my First Amendment [(U.S. Const., amend. I)] freedom of speech. I'm allowed to say what I please."

¶ 14　　Isidro acknowledged that he did not complete the integrated assessment. He insisted he "didn't do nothing wrong," and he believed he "shouldn't have to be persecuted for everything everybody else did." He testified he would no longer comply with DCFS. When

asked to clarify, he said the following:

> "I will not comply. I'm going to take care of my kid when he comes home, because eventually he will. But I've given you clean drops. I've almost lost my job for this. I've almost lost my job for this situation right here. And then when I do lose my job, what are you going to say? You can't take care of your kid without no money. I'm jumping through your hoops left and right. I got two—two family cases I'm fighting now. How many more hoops do you want me to jump through?"

¶ 15      The trial court found it was in H.R.'s best interests to make him a ward of the court and place his guardianship with DCFS. The court found Isidro unfit and unable regarding H.R. because he "has not engaged with the agency and refuses to cooperate." Isidro did not participate in the integrated assessment, and as a result, the assessor had to rely on collateral reports. The court emphasized that Isidro had a "history of interpersonal violence, prior drug-related arrests and convictions, and noted supervision concerns" regarding H.R. As a result, the integrated assessment recommended that Isidro complete assessments for substance abuse and domestic violence, engage in counseling, and participate in parenting services "to improve his ability to be a safe and protective parent." The court determined these recommendations were appropriate and necessary. The court also noted Isidro was verbally aggressive toward the caseworker, and it did not find Isidro credible when he denied threatening violence against the caseworker. The court found such behavior "inappropriate," and it "raise[d] concerns about [Isidro's] ability to control his anger and emotions."

¶ 16      The trial court observed H.R. was "significantly behind in school and below grade level." While in Isidro's care, "instead of attending first grade ***, [H.R.] played video games."

H.R. was only in second grade, but his school was already creating an individualized education plan (IEP) because he was behind in reading and math. H.R. had been diagnosed with attention-deficit/hyperactivity disorder (ADHD) and prescribed medication. He struggled with emotional regulation and demonstrated concerning behavior in foster care and at school. The court highlighted that Isidro worked long hours, and he had a "chaotic plan for others to parent his child" when he was at work. The court concluded, "[H.R.] needs structure, routine, safety, and predictability. [Isidro] has not been able to provide that, and appears unwilling to cooperate with the agency to develop the skills and means to do so."

¶ 17        This appeal followed.

¶ 18                                   II. ANALYSIS

¶ 19        In June 2026, appellate counsel filed a motion seeking leave to withdraw as counsel. Isidro did not file a response. Counsel asserts no arguably meritorious issue can be raised on appeal. We agree.

¶ 20        The Act provides the two-step process trial courts follow when determining whether to make a minor a ward of the court. See *In re A.P.*, 2012 IL 113875, ¶ 18; 705 ILCS 405/2-18(1), 2-22(1) (West 2024). During the first step, the court conducts an adjudicatory hearing to identify whether the minor is abused, neglected, or dependent. See 705 ILCS 405/2-18(1) (West 2024). If so, the court must then conduct a dispositional hearing to decide whether it is in the best interests of the minor to be made a ward of the court. See 705 ILCS 405/2-22(1) (West 2024). When making its determination, the court will consider "whether the parents *** are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so," as well as whether "the health, safety and best interest of the minor will be jeopardized if the minor remains in the custody of

the minor's parents." 705 ILCS 405/2-27(1) (West 2024).

¶ 21        "The paramount consideration in proceedings under the Act is the best interests of the child." *In re J.T.*, 2024 IL App (1st) 232041, ¶ 67. The trial court is best positioned to determine a child's best interests, and we afford such decisions "broad discretion and great deference." *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). "[A] dispositional order entered in a proceeding under the [Act] is a matter committed to the sound discretion of the court." *In re Beatriz S.*, 267 Ill. App. 3d 496, 500 (1994). We will not reverse a trial court's findings of neglect and parental unfitness unless they are against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004); *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 22        We agree that no arguably meritorious issue can be raised on appeal. We find no procedural or evidentiary irregularities upon which to base a claim of error. The trial court did not err during the dispositional hearing when it found H.R. was neglected. H.R.'s mother stipulated to count I of the neglect petition, which alleged her substance abuse prevented her from properly parenting, thereby placing H.R. at risk of harm. Isidro attended the hearing and did not object to the stipulation. The court properly admonished Isidro and H.R.'s mother before accepting the stipulation. The court's neglect finding was not manifestly erroneous, and no reasonable argument can be made to the contrary on appeal. See *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 23        Likewise, the trial court did not err in finding respondent unfit or unable to care for, protect, train, or discipline H.R. The record indicates Isidro did not enroll H.R. in school on time, which motivated Morgan to "chew[ ] him out." By the time Isidro finally got H.R. into

school, H.R. had fallen significantly behind. H.R. was diagnosed with ADHD and was prescribed medication. He was being evaluated for an IEP in second grade. He exhibited concerning behavior and struggled with regulating his emotions. He required stability and structure, which he was not receiving while in Isidro's care.

¶ 24 Isidro's testimony showed he did not believe he had done anything wrong, and he explicitly refused to cooperate with DCFS. He did not participate in the integrated assessment. He was verbally aggressive with H.R.'s caseworker, and he threatened her with violence. Isidro had a history of violence, as well as prior drug-related arrests and convictions. The trial court determined the integrated assessment's recommendations were appropriate. However, Isidro testified that he would not comply with DCFS, which demonstrated his failure to recognize the importance of the recommended services. Isidro also refused to take responsibility for his verbal aggression and violent threats aimed at the caseworker, both by denying he made any threats and by claiming his "passionate" nature was misunderstood by "people involved in this case." The court's finding was not manifestly erroneous, as the opposite conclusion was not clearly apparent. See *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. We agree with appellate counsel that no arguably meritorious issue can be raised on appeal.

¶ 25                                III. CONCLUSION

¶ 26 We agree with appellate counsel this appeal presents no issue of arguable merit. Accordingly, for the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 27 Affirmed.